JEFF N. ROSE, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 44398

July 26, 2007 163 P.3d 408

---

[Rehearing denied December 6, 2007]
[En banc reconsideration denied March 6, 2008]

*Philip J. Kohn*, Public Defender, and *Howard S. Brooks*, Deputy Public Defender, Clark County, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *James Tufteland*, Chief Deputy District Attorney, and *Craig L. Hendricks*, Deputy District Attorney, Clark County, for Respondent.

Before GIBBONS, DOUGLAS and CHERRY, JJ.

## OPINION

By the Court, CHERRY, J.:

Appellant Jeff Rose was convicted of twenty counts of sexual assault on a minor under the age of fourteen based on conduct involving one of his minor daughter's friends. Rose argues that his conviction was not supported by sufficient evidence and that the district court abused its discretion by refusing his proposed jury instruction that the victim must testify with "some particularity" regarding each charge. We conclude that Rose's arguments are without merit and that the child-victim's testimony that the charged incidents occurred every weekend or nearly every weekend during a particular extended time period, along with her description of the

conduct, provided sufficient particularity to support the twenty charges of which Rose was convicted.[1]

Rose also argues that (1) his due process rights were violated by the exclusion of evidence, (2) the district court abused its discretion by denying his motion for a continuance, (3) his due process rights were violated by the use of allegedly false evidence, (4) the State improperly introduced polygraph evidence, (5) his right to be present at all critical stages was violated, (6) the State committed prejudicial prosecutorial misconduct, and (7) cumulative error requires reversal. We conclude that Rose's arguments are without merit, and we therefore affirm the judgment of conviction.

## FACTS

The State charged Rose in an amended information with twenty counts of sexual assault of a minor under the age of fourteen and twenty counts of lewdness with a minor under the age of fourteen, based on conduct involving two young girls—C.C. and A.C. A jury found Rose guilty of the sexual assault charges and acquitted him of the lewdness charges. Rose now appeals from the judgment of conviction.

### The Rose family moves to Las Vegas and meets the victim's family

In November 1999, Rose and his wife Karen moved to Las Vegas with their two children—a ten-year-old son and a six-year-old daughter. The Roses' son became friends with a schoolmate named J.J., who had two younger sisters—seven-year-old C.C. and five-year-old A.C. The Rose's daughter, J.R., became friends with C.C. and A.C. Over the next several years, from late 1999 to 2002, C.C. and A.C. spent the night at the Roses' house almost every weekend and sometimes stayed there the entire weekend. Two other girls, D.A. and Z.V., who were friends with C.C., A.C., and J.R., also spent the night at the Roses' house on occasion.

### The initial accusations against Rose

In July 2002, the four girls accused Rose of molesting them when they spent the night at the Roses' house. Specifically, C.C., A.C., D.A., and Z.V. told D.A.'s mother that Rose had touched their genital areas with his fingers and tongue. Following an investigation, the State initially charged Rose with thirty counts of sexual assault of a minor under the age of fourteen and thirty-six counts of lewdness with a child under the age of fourteen. The case proceeded to trial in January 2004, with Rose representing himself.

---

[1]See LaPierre v. State, 108 Nev. 528, 836 P.2d 56 (1992).

The jury acquitted Rose on all charges involving D.A. and Z.V., but the jury could not reach a verdict on the charges involving C.C. and A.C. Thereafter, the State continued to pursue the charges involving C.C. and A.C. In an amended information, the State charged Rose with twenty counts of sexual assault of a minor under the age of fourteen and twenty counts of lewdness with a minor under the age of fourteen. All but ten of the counts involved C.C.

*The evidence presented at the second trial*

C.C. was twelve years old at the time of the second trial. She testified that during the relevant period she spent one or more nights each weekend at the Roses' house. She stated that on these occasions, Rose would touch her in places that she did not want to be touched. She specified that Rose touched her on her vagina with his finger and his tongue. C.C. testified regarding the time of night Rose would touch her, the rooms in the house where the incidents occurred, and how she was dressed. She also described the manner in which Rose would touch her with his fingers and tongue. Although C.C. could not specifically say how many times Rose touched her in a sexual manner, she testified that it happened ''[a] lot'' and that, other than the approximately seven months that Rose was away in the Navy, it happened every time she spent the night at the Roses' house between late 1999 and the middle of 2002. She testified more specifically that Rose touched her vagina with his fingers on more than ten occasions and with his tongue on more than ten occasions.

A.C. was nine years old at the time of the second trial. She testified that she and her sister spent the night at the Roses' house many times. She testified that Rose touched her vagina with his finger on more than ten occasions, but she could not provide details about the incidents including whether the touching occurred outside or inside of her clothes. A.C. indicated that she only ''[k]ind of'' remembered what happened and that the incidents happened while she was asleep or half-asleep. She acknowledged that she had told a detective that Rose had touched her vagina with his tongue; however, she also acknowledged that she had not testified in any of the prior proceedings that he did so, and did not remember ''quite well'' whether he had done so. In addition to testifying about how Rose touched her, A.C. testified that she saw Rose touch her sister C.C.'s vagina on one occasion.

The State also presented evidence regarding statements Rose made during an interview with Gordon Moore, an investigator with the Nevada Division of Investigations, shortly after the initial allegations were reported in July 2002.[2] Moore testified that the in-

---

[2] Moore conducted a polygraph examination that Rose voluntarily agreed to take. The fact that Rose had submitted to a polygraph examination and the re-

terview focused on C.C.'s allegations because she had provided the clearest and most detailed descriptions of what Rose had done. Rose indicated to Moore that he was scared, and he denied the allegations. Moore testified that in his experience interviewing individuals accused of sexual abuse, such denials were not uncommon, and he therefore continued with the interview. During the course of the interview, Rose eventually offered possible explanations for C.C.'s accusations. In particular, Rose discussed with Moore two incidents that might explain C.C.'s accusations.

The first incident involved Rose putting powder on C.C.'s genital area at her request. According to Moore, Rose explained that on that particular occasion, C.C. and J.R. called him into J.R.'s room after they had been swimming and he entered the room to find them lying naked on J.R.'s bed. J.R. complained of a rash on her genital area and asked Rose to put powder on the rash. C.C. then asked Rose to do the same to her. Rose indicated that he was reluctant to do so because C.C. was not his daughter, but C.C. persisted and so he complied. Rose initially indicated that he sprinkled the powder on C.C. without touching her, but he later indicated in response to Moore's questions that he may have touched her while applying the powder. Rose commented that he felt dirty about the incident because C.C. was not his daughter.

The second incident involved C.C. climbing into Rose's bed while he was asleep and rubbing her vagina on his hand. According to Moore, Rose explained that C.C. and J.R. were asleep at the end of his bed when he woke up to find that C.C. had climbed in bed with him and was rubbing her vagina against his hand. He explained that when he realized what was happening he pulled his hand away and told C.C. to get out of the bed and sleep on the floor.

Despite Rose's statements about these two incidents, Moore acknowledged that Rose continuously and adamantly stated that he never touched C.C. with sexual intent. It appears that neither of the incidents described by Rose formed the basis for the charges against him. And J.R. and C.C. denied that either incident ever occurred. Additionally, shortly after his interview with Moore, Rose told Las Vegas Metropolitan Police Detective Kristin Meegan that he should not have made the statement about the second incident. At trial, Rose denied that either incident he described to Moore ever occurred, claiming that he made them up to satisfy Moore and to get Moore off of his back. The district court also admitted Rose's testimony from the first trial in which he denied making the statements to Moore.

---

sults of the examination were not admitted as evidence at the trial. However, a transcript of the interview conducted as part of the examination was admitted at trial, along with Moore's testimony about statements that Rose made to him.

Rose testified at trial and generally denied all of the allegations. He also testified that in September 2001 he joined the Navy and was not in Las Vegas. He further testified that he did not return to Las Vegas until he was medically discharged in March 2002 after he fractured his leg.

Karen, Rose's wife, also testified on Rose's behalf. She explained that she had never seen Rose touch A.C. or C.C. inappropriately. She also testified that she would have known if Moore had left their bed during the night because he yelled out when he moved due to the pain from his injured hip. However, she also testified that she had significant hearing loss that required her to wear hearing aids and that she did not always wear them. Rose's son also testified to the difficulty Rose had moving and sitting after he returned home from the Navy.

At the conclusion of the trial, the jury found Rose guilty of the twenty counts of sexual assault involving C.C. and acquitted him of the lewdness charges involving C.C. and all charges involving A.C. The district court then sentenced Rose to serve twenty sentences of life in prison with the possibility of parole after twenty years, with two of the sentences to be served consecutively and the other sentences to be served concurrently. Rose now appeals.

## *DISCUSSION*

### *The conviction was supported by sufficient evidence*

Rose argues that his conviction was not supported by sufficient evidence because C.C. testified that the sexual acts occurred more than ten times, but she did not describe each of the ten instances with particularity. He argues that the time of the acts was important to his defense because, for a period of time when the acts purportedly occurred, Rose was away in the military.

The Due Process Clause of the United States Constitution requires that an accused may not be convicted unless each fact necessary to constitute the crime with which he is charged has been proven beyond a reasonable doubt.[3] When determining whether a jury verdict was based on sufficient evidence to meet due process requirements, we will inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[4] " '[I]t is the jury's function, not that

---

[3]*Fiore v. White*, 531 U.S. 225, 228-29 (2001); *In re Winship*, 397 U.S. 358, 364 (1970); *Origel-Candido v. State*, 114 Nev. 378, 382, 956 P.2d 1378, 1381 (1998).

[4]*Origel-Candido*, 114 Nev. at 381, 956 P.2d at 1380 (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984)).

of the court, to assess the weight of the evidence and determine the credibility of witnesses.' ''[5]

When considering the sufficiency of the evidence in sexual assault cases, we have held that the victim's testimony alone is sufficient to uphold a conviction.[6] Although the victim's testimony need not be corroborated, we have held that "the victim must testify with *some* particularity regarding the incident in order to uphold the charge."[7] In evaluating whether a child-victim's uncorroborated testimony was sufficient to support multiple charges in *LaPierre v. State*, we acknowledged that "child victims are often unable to articulate specific times of events" and have difficulty recalling "exact instances when the abuse occurs repeatedly over a period of time."[8] Accordingly, we explained in *LaPierre* that to support multiple charges of sexual abuse over a period of time, a child victim need not "specify exact numbers of incidents, but there must be some reliable indicia that the number of acts charged actually occurred."[9]

In looking at the child-victim's testimony in *LaPierre*, this court determined that the child victim testified with sufficient particularity to support five of the ten charged incidents, as she described in general terms when or where those incidents occurred.[10] However, this court further determined that the child-victim's testimony lacked particularity as to the remaining five charges. Specifically, when the child victim was asked how many times the defendant had assaulted her, she responded that it was " '[t]en or more times' " and that she knew it was that many because " 'he was doing it up until he left.' ''[11] And she later testified that she was not "absolutely sure" how many times it happened and that was why she had said "ten or more times."[12] This court described the testimony as "speculation" and "conjecture" regarding the number of incidents and concluded that "[s]omething more is required."[13] In particular, this court opined that the case "might" be different if the child victim had testified that the defendant had assaulted her "every weekend for the period of time [he] resided in the family home or that he assaulted her nearly every weekend."[14] But be-

---

[5]*Id.* (quoting *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992)) (alteration in original).

[6]*LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992).

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]*Id.* at 530, 836 P.2d at 57.

[11]*Id.* at 530-31, 836 P.2d at 57.

[12]*Id.* at 531, 836 P.2d at 57.

[13]*Id.* at 531, 836 P.2d at 58.

[14]*Id.*

cause the child-victim's testimony was more speculative, this court reversed five of the convictions for insufficient evidence.

In this case, the State charged Rose with twenty counts of sexual assault. C.C. and others testified that from late 1999 to July 2002, she spent at least one night at the Roses' house almost every weekend. C.C. testified that Rose touched her nearly every time she spent the night. The only times he did not touch her were when he was away in the Navy from September 2001 to March 2002. Although she could not specify an exact number of incidents, she testified that he touched her vagina with his fingers more than ten times and with his tongue more than ten times. She described different locations where she was touched and graphically detailed his actions. She recalled seeing the time on the clock when he assaulted her in certain rooms, and she described how she sometimes tried to fight him off and how he would flip her over if she was on her stomach.

The victim's testimony in this case is distinguishable from that of the victim in *LaPierre*. C.C. definitively testified that Rose assaulted her nearly every time she spent the night at his house before and after he was away in the Navy and that she spent the night at his house almost every weekend during that time. This is the kind of testimony that we opined ''might'' have made a difference in *LaPierre*. Faced with such testimony here, we conclude it is sufficient. Taking the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charged sexual assaults beyond a reasonable doubt. Accordingly, Rose's conviction was supported by sufficient evidence.

*The district court correctly instructed the jury on the burden of proof*

Rose argues that the district court should have given his proposed jury instruction, based on *LaPierre*, that although a victim's testimony need not be corroborated, ''the victim must testify with some particularity regarding each incident charge[d] for [the jury] to sustain a verdict of guilt on that particular charge.'' Rose also argues that the district court erred by giving an instruction over defense counsel's objection, which conflicts with the particularity requirement in *LaPierre*. The jury instruction stated that, ''[w]here a child has been the victim of sexual assault or lewdness with a minor, and does not remember the exact date of the act, the State is not required [to] prove a specific date, but may prove a time frame within which the act took place.''

''The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an

abuse of that discretion or judicial error."[15] "It is not error for a court to refuse an instruction when the law in that instruction is adequately covered by another instruction given to the jury."[16]

The instruction proffered by Rose and that given by the district court are correct statements of the law.[17] But the particular instruction regarding the State's burden as to the date of the charged act does not encompass Rose's proffered instruction. However, we conclude that Rose's instruction was sufficiently covered by other jury instructions regarding the State's burden of proof and the reasonable doubt standard. The discussion in *LaPierre* regarding the particularity required in the victim's testimony involves the sufficiency of the evidence. In other words, if there is no corroboration, then the victim's testimony must be sufficient to meet the State's burden of proof. The jury was properly instructed on that burden. A separate instruction, as proffered by Rose, was unnecessary. And as explained earlier, the State met its burden in this case. We conclude that the district court did not abuse its discretion or commit judicial error in its decision as to the challenged instructions.[18]

*The district court did not abuse its discretion by denying Rose's motion for a continuance based on the State's late-disclosed audiotape of Rose's interview with Moore*

Rose argues that the district court abused its discretion by denying his request for a continuance after he received the complete au-

---

[15]*Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

[16]*Doleman v. State*, 107 Nev. 409, 416, 812 P.2d 1287, 1291 (1991).

[17]*See LaPierre*, 108 Nev. at 531, 836 P.2d at 58; *Cunningham v. State*, 100 Nev. 396, 683 P.2d 500 (1984) (holding that State need not allege exact dates of sexual offense in charging document but may rely instead on a range of dates).

[18]We also reject Rose's argument that the district court violated his due process right to a fair trial when it excluded evidence offered to support his theory that the victims had fabricated the allegations and to impeach the victims regarding statements they had made to police. Although a criminal defendant has a due process right to "introduce into evidence any testimony or documentation which would tend to prove the defendant's theory of the case," *Vipperman v. State*, 96 Nev. 592, 596, 614 P.2d 532, 534 (1980), that right is subject to the rules of evidence, including the rules that evidence must be relevant, and that even relevant evidence is inadmissible if its probative value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury," NRS 48.035(1). *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Jackson v. State*, 116 Nev. 334, 335, 997 P.2d 121, 121 (2000); *Brown v. State*, 107 Nev. 164, 167, 807 P.2d 1379, 1381 (1991); *Vipperman*, 96 Nev. at 596, 614 P.2d at 534. Having considered the record, we conclude that the district court did not abuse its discretion in concluding that to the extent that Rose's proffered evidence was relevant, it was

diotape of his interview with Moore just before the second trial started. We disagree.

This court reviews the district court's decision regarding a motion for continuance for an abuse of discretion.[19] We have previously held that the district court abused its discretion by denying a defendant's request for a modest continuance to procure witnesses when the delay was not the defendant's fault.[20] However, when a defendant fails to demonstrate that he was prejudiced by the denial of a continuance, the district court's decision denying a continuance is not an abuse of discretion.[21]

Here, Rose had at least a partial audiotape of the interview, a complete transcript, and Moore's notes before the first trial. He has not demonstrated that he was prejudiced by the district court's refusal to grant a continuance.[22] Accordingly, we conclude that the district court did not abuse its discretion in denying the motion for a continuance.[23]

*The State did not introduce improper polygraph evidence*

Rose argues that the district court abused its discretion by denying his motion for a mistrial after Moore mentioned the word "polygraph" in describing his training and experience. Rose argues that a mistrial was warranted because the testimony about Moore's training amounted to improper admission of polygraph evidence. We disagree.

The district court has discretion to deny a motion for a mistrial, and this court will not reverse the district court's decision " "absent

---

inadmissible as it would unduly confuse the issues or mislead the jury. *See Jones v. State*, 113 Nev. 454, 466-67, 937 P.2d 55, 63 (1997) (stating that district court has discretion to admit or exclude evidence and that decision is reviewed for manifest error).

[19]*See Mulder v. State*, 116 Nev. 1, 9, 992 P.2d 845, 850-51 (2000).

[20]*Lord v. State*, 107 Nev. 28, 42, 806 P.2d 548, 556 (1991).

[21]*Mulder*, 116 Nev. at 10, 992 P.2d at 850.

[22]*Cf. Beasley v. State*, 81 Nev. 431, 404 P.2d 911 (1965) (concluding that failure to grant continuance because defendant was not provided with transcript of codefendant's trial until day of trial was prejudicial error).

[23]Rose further argues that his due process rights were violated when the State introduced Gordon Moore's testimony that Rose told him about putting powder on J.R.'s and C.C.'s vaginas and about C.C. climbing into bed with him. Specifically, Rose argues that his rights were violated because (1) Moore's testimony was more prejudicial than probative, (2) the evidence amounted to prior bad acts, but the district court did not conduct a *Petrocelli* hearing, (3) the district court refused to allow Rose to cross-examine Moore at the suppression hearing, (4) the district court violated constitutional procedure by ruling on Rose's suppression motion before the hearing had been com-

a clear showing of abuse.' ''[24] Polygraph evidence is inadmissible unless the State, defendant, and defendant's counsel have executed a stipulation providing for the defendant's submission to the polygraph examination.[25] However, '' '[a] witness's spontaneous or inadvertent references to inadmissible material, not solicited by the prosecution, can be cured by an immediate admonishment directing the jury to disregard the statement.' ''[26]

Here, during the State's questioning of Moore, Rose asked for a foundation for Moore's expert opinions on interviewing suspects, and the district court ordered the State to question Moore about his qualifications. Moore then mentioned the word ''polygraph'' when describing his training and experience. Rose objected, and the district court specifically admonished the jury to disregard the statement. Moore did not make any mention of the fact that he gave Rose a polygraph test or testify as to the results of any polygraph test. Under the circumstances, we conclude that the admonishment was sufficient to cure any prejudice and therefore the district court did not abuse its discretion by denying Rose's motion for a mistrial.

*Rose's constitutional rights were not violated when the district court purportedly excluded him from jury voir dire by having bench conferences with certain prospective jurors*

Rose argues that the district court violated his Fifth and Fourteenth Amendment rights to be present at all critical stages of a criminal prosecution. Rose contends that, because the district court had unrecorded bench conferences with certain prospective jurors during voir dire, he was effectively excluded from the jury selection process.

A defendant must be present at every stage of his trial, including jury selection.[27] A defendant's right to be present at jury selection arises from his due process right to a fair hearing.[28] However, '' '[t]he due process aspect has been recognized only to the extent that a fair and just hearing would be thwarted by the defen-

---

pleted, and (5) the State committed prosecutorial misconduct by using the evidence while cross-examining Rose. We have considered these issues and conclude that they lack merit.

[24]*Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) (quoting *Randolph v. State*, 117 Nev. 970, 981, 36 P.3d 424, 431 (2001)).

[25]*Jackson v. State*, 116 Nev. 334, 335-36, 997 P.2d 121, 122 (2000).

[26]*Ledbetter*, 122 Nev. at 264-65, 129 P.3d at 680 (quoting *Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005)).

[27]NRS 178.388(1).

[28]*Gallego v. State*, 117 Nev. 348, 367-68, 23 P.3d 227, 240 (2001).

dant's absence.' "[29] Violations of the right to be present are reviewed for harmless error.[30]

In this case, the district court questioned four prospective jurors at the bench after they indicated that they could not be fair and impartial because they had previously been sexually assaulted or had friends or family that had been accused of sexual assault. The district court then dismissed them. The district court explained its reasoning for dismissing each juror and stated that it conducted individual voir dire at the bench because the issues were embarrassing and sensitive and the court did not want to taint the remainder of the jury pool. We conclude that Rose has not demonstrated that his absence from the bench conferences prejudiced him in any way. In particular, because the jurors were dismissed because they could not be fair and impartial to Rose, it appears the proceedings were fair and just despite his absence.[31]

*The State did not commit prejudicial prosecutorial misconduct*

Rose raises four instances of prosecutorial misconduct. First, the prosecutor alluded to facts not in evidence and implied that Rose had a prior criminal history. Second, the prosecutor referred to Rose as a predator. Third, the prosecutor asked the jury to be fair to the victims and appealed to the jurors' sympathies. Fourth, the prosecutor attacked Rose's lawyers by contending that they hid the truth and engaged in deception. Rose argues that this misconduct warrants reversal of his conviction. We disagree.

When deciding whether prosecutorial misconduct is prejudicial, "the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process."[32] We examine the context of the statements, and we will not overturn a conviction solely because of the comments "unless the misconduct is 'clearly demonstrated to be substantial and prejudicial.' "[33]

Generally, the failure to object to prosecutorial misconduct precludes appellate review.[34] However, we will consider prosecutorial

---

[29]*Id.* (quoting *Kirksey v. State*, 112 Nev. 980, 1000, 923 P.2d 1102, 1115 (1996)).

[30]*Id.*

[31]*See id.* (holding that defendant was not prejudiced by his absence during jury selection and that proceeding in his absence was fair and just when jurors were dismissed during in camera proceeding by stipulation of counsel).

[32]*Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).

[33]*Miller v. State*, 121 Nev. 92, 99, 110 P.3d 53, 58 (2005) (quoting *Sheriff v. Fullerton*, 112 Nev. 1084, 1098, 924 P.2d 702, 711 (1996)).

[34]*Gaxiola v. State*, 121 Nev. 638, 653-54, 119 P.3d 1225, 1236 (2005).

misconduct, under plain error review, " 'if the error either: (1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings.' "[35]

### *Alluding to facts not in evidence*

During Karen Rose's direct examination, the prosecutor objected to defense counsel's question about Rose's propensity to show attraction to children and commented that he did not know if Rose wanted to open that door. Rose objected to the comment on the ground that it alluded to past inappropriate behavior involving young children. The district court sustained Rose's objection and specifically admonished the jury to disregard the statement.

It is improper for the State to refer to facts not in evidence.[36] Further, it is also improper for the State to infer that a defendant has a prior criminal history.[37]

Here, the State improperly referenced evidence not in the record and implied that Rose had previously committed a criminal act. However, we conclude that the district court's admonishment was sufficient to cure any prejudice caused by the prosecutor's comment.[38]

### *Reference to Rose as a predator*

During the State's closing arguments, the prosecutor characterized Rose as a "predator who used his daughter to lure friends over to his house so that he could use them for his sexual pleasure." Rose argues that this statement was an improper inflammatory characterization.

Because Rose failed to object to this comment, we need only review it for plain error. Here, we conclude that there was no error because the prosecutor's statement was supported by the evidence that Rose repeatedly molested C.C., one of his daughter's friends, when she stayed the night at his house.[39] However, to the extent

---

[35]*Id.* at 654, 119 P.3d at 1236 (quoting *Rowland v State*, 118 Nev. 31, 38, 39 P.3d 114, 118-19 (2002)).

[36]*Rippo v. State*, 113 Nev. 1239, 1255, 946 P.2d 1017, 1027 (1997).

[37]*See Thomas v. State*, 114 Nev. 1127, 1142, 967 P.2d 1111, 1121 (1998).

[38]*See Greene v. State*, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997).

[39]*See Miller*, 121 Nev. at 100, 110 P.3d at 58-59 (holding that an argument that the defendant was "preying on the citizens of Nevada" was not misconduct because evidence supported prosecutor's characterization of defendant).

that the prosecutor's characterization may have crossed the line of permissible arguments,[40] we conclude that the error was not prejudicial.

> *Asking the jury to be fair to the victims and appealing to the jurors' sympathies*

The prosecutor asked the jury to give the victims justice and focused on their ages:

> And now I ask you to insure that these girls also get their justice. . . . I ask you not to forget about [the victims], to remember them and to believe them, because they aren't old enough to vote, they are not old enough to drive, they aren't old enough to really make a decision as to who babysits them, who they spend the night with, but they are old enough to be believed, to be remembered, and to be given their justice.

Rose argues that this argument is improper because the State's argument was designed to appeal to the jury's sympathies or to plead to the jury to be fair to the victim. We agree that the argument was improper,[41] but because Rose failed to object to this argument, we review for plain error and conclude that the error was not prejudicial.

> *Attacking Rose's lawyers by contending that they hid the truth and engaged in deception*

The prosecutor also argued: "And what happened to this trial being a truth-seeking process. That kind of went out the door, didn't it? Defense counsel comes in with smoke screens and flatout deception." Rose argues that this comment improperly disparages the defense.

Rose did not object to the comment; therefore, we must review it under the plain error standard. We have generally stated that it is improper for the State to "disparage legitimate defense tac-

---

[40]*Jones v. State*, 113 Nev. 454, 469, 937 P.2d 55, 64 (1997) (holding that it is improper for the State to liken the defendant to a rabid animal because " 'such toying with the jurors' imagination is risky and the responsibility of the prosecutor is to avoid the use of language that might deprive a defendant of a fair trial.' " (quoting *Pacheco v. State*, 82 Nev. 172, 180, 414 P.2d 100, 104 (1966))).

[41]*See Jones*, 101 Nev. at 577, 707 P.2d at 1131 (concluding that it is improper to make an argument designed to appeal to the jurors' sympathies).

tics.''[42] But we have not addressed specifically whether calling the defendant's defense ''smoke and mirrors'' is improper disparagement of the defense. Courts in other jurisdictions have reached varying conclusions. The Colorado Court of Appeals has concluded that referring to the defense as ''smoke and mirrors'' is ''improper when used as a means to attack or mock defense counsel.''[43] However, the Indiana Court of Appeals has concluded that ''smoke and mirrors'' is a permissible comment on the evidence, as it ''concern[s] the quality of [the defendant's] defense.''[44] We agree with the Colorado court. We hold that referring to the defense as ''smoke screens'' is improper. But in this case, we conclude that the comment does not amount to plain error because it was not prejudicial.

### Cumulative error

Rose argues that his conviction must be reversed because of cumulative error. ''The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually.''[45] If the defendant's fair trial rights are violated because of the cumulative effect of errors, this court will reverse the conviction.[46] The relevant factors to consider when deciding whether cumulative error requires reversal are ''(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.''[47] Although the crimes charged are serious, the State presented compelling evidence of Rose's guilt and the few errors that we have discussed are minor. We hold that there is no cumulative error warranting reversal.

### CONCLUSION

We hold that there was sufficient evidence to support Rose's conviction and that the district court properly instructed the jury regarding the evidence required for a guilty verdict. We further hold that the district court did not abuse its discretion by excluding evidence proffered by Rose or denying his motions for a continuance and a mistrial. Finally, although there were some instances of prosecutorial misconduct, none of them warrant reversal

---

[42]*Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004).

[43]*People v. Perea*, 126 P.3d 241, 248 (Colo. Ct. App. 2005).

[44]*Ramsey v. State*, 853 N.E.2d 491, 500-01 (Ind. Ct. App. 2006).

[45]*Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002).

[46]*DeChant v. State*, 116 Nev. 918, 927, 10 P.3d 108, 113 (2000).

[47]*Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

of Rose's conviction. We therefore affirm the judgment of conviction.[48]

GIBBONS and DOUGLAS, JJ., concur.

---

[48]On March 19, 2007, appellant's counsel filed a motion to disqualify the Clark County District Attorney's Office from further participation in this appeal, to submit a clarification of facts relevant to the appeal, and to file a transcript of the oral argument conducted on February 8, 2007. This court has been fully apprised of the facts as reflected in the record of the proceedings below and has not considered any factual assertions made by counsel during oral argument which are not supported by the facts in the record. Accordingly, we deny the motions filed on March 19, 2007.