An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

LANALSIKOV LOWE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64143

**FILED**

JUL 2 2 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of misdemeanor battery constituting domestic violence. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

First, appellant Lanalsikov Lowe contends that the district court abused its discretion by denying his written and oral motions to dismiss counsel and appoint alternate counsel without conducting sufficient hearings. Lowe alleges that he made multiple motions to dismiss the public defender's office, well in advance, right before, and during trial, and that the district court summarily denied all his requests.

This court reviews a district court's denial of a motion to substitute counsel for an abuse of discretion. *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005). "A defendant's right to substitution of counsel is not without limit. Absent a showing of adequate cause, a defendant is not entitled to reject his court-appointed counsel and request substitution of other counsel at public expense." *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (footnote omitted). "[I]f the complete collapse of the attorney-client relationship is evident, a refusal to substitute counsel violates a defendant's Sixth Amendment rights." *Id.* at

SUPREME COURT
OF
NEVADA

(O) 1947A

14-23761

969, 102 P.3d at 576. Additionally, a district court may not summarily deny a motion for new counsel when the motion is made considerably in advance of trial. *Id.* at 968, 102 P.3d at 576. When reviewing a denial of a motion to substitute counsel, we consider: "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion." *Id.* (internal quotation marks omitted). A defendant "may not, as a matter of law, create a conflict requiring substitution of appointed counsel." *Id.* at 971, 102 P.3d at 578.

Lowe began requesting new counsel as soon as the public defender's office was re-appointed following retained counsel's withdrawal due to a breakdown in the attorney-client relationship. Initially, Lowe indicated he wanted to represent himself, and the district court scheduled the matter for a canvass pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975). Upon further inquiry, Lowe stated that he would retain counsel if he was out of custody but would represent himself if he remained incarcerated pending trial. The district court appointed the public defender's office for the limited purpose of representing Lowe on a motion to increase his bail, but Lowe alleged that he had a conflict of interest with the public defender (PD1) who appeared on his behalf at the preliminary hearing. After hearing from Lowe on the alleged conflict of interest, the district court determined that there was no conflict of interest but that Lowe was merely dissatisfied with PD1. At the next hearing, Lowe alleged a conflict of interest with the public defender (PD2) appearing on his behalf, simply stating he knew counsel from a club. By the next court date, a different public defender (PD3) appeared for the motion to increase bail, which the district court granted. Lowe again indicated that, because he would remain in jail, he wanted to represent

himself. The district court conducted the *Faretta* canvass and deemed Lowe competent to represent himself. After the district court appointed the public defender's office to act as standby counsel, Lowe stated, "I want a Public Defender. Give me a Public Defender."

When Lowe started leaving messages for PD2 that he was going to file documents against her with the State Bar and this court and accusing her of colluding with the State in order to convict him, PD2 sought to withdraw on behalf of the entire office. The district court determined that it was Lowe's behavior creating the problem and that there was a conflict with PD2 but not with the entire office. Lowe subsequently made numerous motions to dismiss PD3, beginning months prior to trial and continuing until the day of opening argument. For each motion, it appears from the record that the district court inquired into Lowe's reasons for the withdrawal, allowed counsel a chance to respond to the allegations, and ultimately denied the motions. At one juncture, the district court noted that Lowe continually filed motions with bare allegations unsupported by any facts; however, Lowe was still afforded an opportunity to make a record of his allegations that PD3 had not visited him, investigated, filed any motions, or issued subpoenas, and refused to file a writ petition.

Having considered the relevant factors, we conclude that the district court did not abuse its discretion in denying Lowe's motions to dismiss counsel and appoint alternate counsel. *See Young*, 120 Nev. at 970, 102 P.3d at 577 (considering, among other factors, whether defendant filed his motions for dilatory tactics or bad faith interference with the administration of justice). Additionally, it does not appear from the record that there was a complete collapse in the attorney-client relationship, as

Lowe was able to discuss discovery and potential witnesses with PD3 in preparation for trial.

Second, Lowe contends that the district court abused its discretion by allowing the State's domestic violence expert to testify at trial. Lowe argues that the testimony did not assist the jury, was more prejudicial than probative, vouched for witnesses, and was in violation of NRS 48.061(2), which states that "[e]xpert testimony concerning the effect of domestic violence may not be offered against a defendant . . . to prove the occurrence of an act which forms the basis of a criminal charge against the defendant."

At trial, the witness testified consistently with the State's pretrial notice as an expert on power and control dynamics, victim behavior in domestic violence relationships, and generally the cycle of abuse. The testimony was based upon the witness's specialized knowledge of, and extensive work with, victims and perpetrators of domestic abuse and was relevant to explain to a layperson why a victim of abuse might maintain contact or remain in a relationship with an abuser, recant a report of abuse, or minimize the abusive behavior. The witness testified that she had never met Lowe or the victim, and she was not asked about, nor did she offer, an opinion of other witnesses' credibility or Lowe's guilt. The witness did not testify to matters precluded by NRS 48.061(2) or to prior bad acts, the testimony was highly probative, and the probative value was not substantially outweighed by unfair prejudice. As to Lowe's argument that the witness's testimony was not the product of reliable methodology, we have held that the factors enumerated in *Hallmark v. Eldridge*, 124 Nev. 492, 500-01, 189 P.3d 646, 651-52 (2008), "may be afforded varying weights and may not apply equally in every case" and

that "[i]t is up to the district court judge to make the determination regarding the varying factors," *Higgs v. State*, 126 Nev. 1, 20, 222 P.3d 648, 660 (2010). We conclude that the district court did not abuse its discretion by allowing the testimony of the State's expert witness on domestic violence. *See Perez v. State*, 129 Nev. ___, ___, 313 P.3d 862, 866-70 (2013).

Third, Lowe contends that the prosecutor committed numerous instances of misconduct by repeatedly arguing that the victim was a liar. Lowe failed to object to these comments, and we review for plain error. NRS 178.602; *Rose v. State*, 123 Nev. 194, 208-09, 163 P.3d 408, 418 (2007). It is improper to characterize a witness as a liar or a witness's testimony as a lie, but to represent to the jury that testimony might be incredible or to demonstrate through inferences that a witness's testimony is palpably untrue is within the confines of proper argument. *Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990). During closing and rebuttal arguments, the prosecutor outlined the inconsistencies between the victim's statements the night of the incident and her subsequent preliminary hearing and trial testimony, in which she claimed not to remember anything because of drug abuse. The prosecutor argued that the victim was lying and referenced evidence presented at trial to support this argument. While we have held that "reasonable latitude should be given to the prosecutor to argue the credibility of the witness—even if this means occasionally stating in argument that a witness is lying," in this case, the prosecutor repeatedly argued that the victim was a liar and that was in error. *Rowland v.* State, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002). However, we conclude that the prosecutor's argument does not amount to plain error as Lowe has not shown that the

argument prejudiced him or affected his substantial rights. *See* NRS 178.602; *Rose*, 123 Nev. at 208-09, 163 P.3d at 418.

Fourth, Lowe contends that cumulative error requires reversal of his convictions. Because Lowe demonstrates only one error, we conclude that he is not entitled to relief on this claim. *See United Sates v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("One error is not cumulative error.").

Having considered Lowe's contentions and concluded that no relief is warranted, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

cc:    Hon. David B. Barker, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk