131 Nev., Advance Opinion 103

IN THE SUPREME COURT OF THE STATE OF NEVADA

JAQUEZ DEJUAN BARBER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62649

FILED

DEC 31 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of burglary and grand larceny. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

*Reversed.*

Philip J. Kohn, Public Defender, and Sharon G. Dickinson, Deputy Public Defender, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Jonathan E. VanBoskerck, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

Under NRS 62D.310, a juvenile court must make a final disposition of a case within 60 days of a petition being filed, but the court

may extend the time for final disposition up to 1 year. In this appeal, we are asked to consider whether the juvenile court loses jurisdiction over a juvenile if it does not make its final disposition of the case within the one-year period provided by statute. We conclude that the juvenile court maintains jurisdiction over a juvenile even after expiration of the one-year time period. We are also asked to consider whether there was sufficient evidence to convict appellant Barber of burglary and grand larceny. In considering this argument, we reexamine our decision in *Geiger v. State*, 112 Nev. 938, 940-41, 920 P.2d 993, 995 (1996), and conclude that insufficient evidence in this case warrants reversal of the judgment of conviction.

## *FACTS AND PROCEDURAL HISTORY*

On January 21, 2009, Aldegunda Mendoza returned home from a meeting at her daughter's school to find her front door ajar and her backyard "full of water." She noticed her drawers had been ransacked and she called the police. Las Vegas Metropolitan Police Department (LVMPD) officer Chad Shevlin responded and performed a sweep of the home, discovering that the back sliding door and the master bathroom window were also open. Soon after, Mendoza discovered cash and Mexican pesos were missing from the home.

A broken spigot attached to the back of the house, located under the master bathroom window, was the source of the water in the backyard. A bucket of concrete paint had been placed under the outside of the master bathroom window, and the tub ring and the interior wall had marks on them. Officer Shevlin opined that this evidence suggested that the bathroom window had been the intruder's point of entry. He then called for crime scene analysts to come to the home.

Robbie Dahn, a senior crime scene analyst, and three ride-along department trainees responded to the call. Dahn dusted for fingerprints, and she or a trainee under her supervision photographed the scene. Dahn took many fingerprints but focused on what she also determined to be the point of entry, the master bathroom window. Additionally, she focused on the interior of the bathroom.

Latent print examiner Kathryn Aoyama testified that Dahn recovered eight readable prints. Three of the prints recovered from inside the home belonged to a ride-along trainee. Four prints did not match anyone. Aoyama testified that one palm print found on the outside master bathroom window, the alleged point of entry, matched Barber. This match, however, was made after Barber turned 18 years old and was arrested and processed in the adult system for a different crime.

*Procedural history*

At the time of the burglary, Barber was 17 years old. On April 8, 2009, LVMPD sought an arrest warrant for Barber. The juvenile court issued the warrant on May 12, 2009, and the warrant was served that same day. Also on May 12, the State filed a juvenile delinquency petition charging Barber with burglary and grand larceny.

On August 16, 2010, more than a year after the State filed its juvenile delinquency petition, the State filed a petition to certify Barber for criminal proceedings as an adult. At the certification hearing the following month, Barber waived any objection to the certification petition, and the juvenile court granted the State's petition and certified Barber for criminal proceedings as an adult.

After a ~~three~~ 3-day jury trial, Barber was found guilty on both counts. The court sentenced Barber to a term of 12 to 30 months for each

count running concurrently and ordered $7,000 in restitution. This appeal followed.

*DISCUSSION*

On appeal, Barber argues that the juvenile court lost jurisdiction over him after 1 year had passed without the court making a final disposition on the delinquency petition pursuant to NRS 62D.310(3), and there was insufficient evidence to convict him of burglary and grand larceny.[1]

*The juvenile court maintained jurisdiction over Barber after 1 year had passed without the court making a final disposition of the delinquency petition under NRS 62D.310(3)*

Barber argues that since NRS 62D.310(3) requires a final disposition of a case within 1 year after a delinquency petition has been filed and 15 months had passed before the State filed a certification petition, the juvenile court lost jurisdiction over him. This jurisdiction issue is a matter of first impression.

---

[1]Barber also argues that the district court violated his constitutional right to a speedy trial and statutory right to a trial within 60 days pursuant to NRS 178.556, and the district court erred in denying his motion for an advisory verdict jury instruction. After careful consideration, we determine that these arguments are without merit.

Barber further argues that he did not make a knowing and intelligent waiver of his right to the certification hearing, the district court failed to properly address his motions to substitute counsel, the latent print examiner's testimony violated the Confrontation Clause, the $7,000 restitution order should be reversed, and cumulative error warrants reversal. In light of our ultimate disposition in this case, we do not address these arguments.

Resolving this issue requires an interpretation of NRS 62D.310(3), and this court reviews questions of statutory construction de novo. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). Legislative intent is paramount to interpreting a statute. *Id.* "The starting point for determining legislative intent is the statute's plain meaning; when a statute is clear on its face, a court cannot go beyond the statute in determining legislative intent." *Id.* (internal quotations omitted). "This court 'avoid[s] statutory interpretation that renders language meaningless or superfluous,' and '[i]f the statute's language is clear and unambiguous, [this court will] enforce the statute as written.'" *In re George J.*, 128 Nev., Adv. Op. 32, 279 P.3d 187, 190 (2012) (alterations in original) (quoting *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011)). Additionally, this court "attempt[s] to harmonize [statutory] provisions in order to carry out the overriding legislative purpose." *In re Eric A.L.*, 123 Nev. 26, 31, 153 P.3d 32, 35 (2007).

Here, the central issue is whether the juvenile court had jurisdiction over Barber. While Barber did not challenge jurisdiction in juvenile or district court, jurisdictional issues can be raised at any time. *Landreth v. Malik*, 127 Nev. 175, 179, 251 P.3d 163, 166 (2011) ("[W]hether a court lacks subject matter jurisdiction 'can be raised by the parties at any time, or sua sponte by a court of review, and cannot be conferred by the parties.'" (quoting *Swan v. Swan*, 106 Nev. 464, 469, 796 P.2d 221, 224 (1990))). This court reviews issues of subject matter jurisdiction de novo. *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009).

"[T]he juvenile court system is a creation of statute, and it possesses only the jurisdiction expressly provided for it in the statute."

*Kell v. State*, 96 Nev. 791, 792-93, 618 P.2d 350, 351 (1980). By statute, "the juvenile court has exclusive original jurisdiction over a child living or found within the county who is alleged or adjudicated to have committed a delinquent act." NRS 62B.330(1). Here, the juvenile court had exclusive jurisdiction because the State alleged that when Barber was 17 years old, he committed acts that would be criminal offenses (burglary under NRS 205.060 and grand larceny under NRS 205.220), and those offenses are not excluded from the juvenile court's jurisdiction. *See* NRS 62A.030(1) (defining "child"); NRS 62B.330 (providing that the juvenile court has exclusive original jurisdiction over a child alleged or adjudicated to have committed a delinquent act and listing acts deemed not to be delinquent and therefore not within the juvenile court's jurisdiction).

However, Barber argues that the juvenile court lost jurisdiction and could not certify the case to the district court when it did not comply with NRS 62D.310. We disagree. Under NRS 62D.310(1), "the juvenile court shall make its final disposition of a case not later than 60 days after the date on which the [delinquency] petition in the case was filed." The statute permits several exceptions for extension of the 60-day period, but "[t]he juvenile court shall not extend the time for final disposition of a case beyond 1 year from the date on which the petition in the case was filed." NRS 62D.310(3); *see* NRS 62D.310(2). The statute does not specify a remedy or sanction when the juvenile court does not comply with the statutory deadlines.

Jurisdiction stripping or dismissal requirements would normally be included if that were the Legislature's intent. For example, some states have provisions that are similar to NRS 62D.310. *See, e.g.*, Fla. R. Juv. P. R. 8.090(a)(1) (requiring an adjudicatory hearing within 90

days from detention); 705 Ill. Comp. Stat. Ann. 405/5-601(1) (West 2005) (requiring a trial within 120 days of filing a delinquency petition). These statutes, however, do not indicate that juvenile courts lose jurisdiction; instead, they either expressly require or permit dismissal when courts exceed their deadlines. Fla. R. Juv. P. R. 8.090(m) (permitting dismissal); 705 Ill. Comp. Stat. Ann. 405/5-601(3) (requiring dismissal). Unlike Florida and Illinois, exceeding the deadlines in NRS 62D.310 does not require dismissal. Other states that have interpreted similar statutes that are silent on the remedy or sanction for violating the time limits have not read jurisdiction stripping or dismissal language into them. For example, Vermont courts have held that delays beyond the deadlines for disposition hearings in its statutes did not mandate dismissal. *See, e.g., In re J.V.*, 573 A.2d 1196, 1196 (Vt. 1990) (noting that "[t]he time limits are directory rather than jurisdictional requirements"). Accordingly, without express language in the statutes articulating that juvenile courts lose jurisdiction for noncompliance, the juvenile court maintains jurisdiction. *See McKay v. Bd. of Cnty. Comm'rs of Douglas Cnty.*, 103 Nev. 490, 492, 746 P.2d 124, 125 (1987) (explaining that when a statute is silent, "it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the [L]egislature would or should have done").

In addition, commentary during the adoption of Title 5 further supports the notion that juvenile courts should maintain jurisdiction of juveniles. "Truly we want to keep children in juvenile court if we can help them. We do not want to escalate them up into adult circumstances and give them a record at such a young age and perhaps impact the rest of

their lives." Hearing on S.B. 197 Before the Senate Judiciary Comm., 72d Leg. (Nev., March 7, 2003) (statement by Judge Cynthia Dianne Steel).[2]

---

[2]Barber also argues that NRS 62D.310 "is akin to a statute of limitations requiring dismissal when a case is not filed within a determined period." "A statute of limitations prohibits a suit after a period of time that follows the accrual of the cause of action." *FDIC v. Rhodes*, 130 Nev., Adv. Op. 88, 336 P.3d 961, 965 (2014). NRS 62D.310 says nothing about when a delinquency petition must be filed; instead, it places a deadline on the court to make a final disposition. Thus, because a statute of limitations is a limitation on the commencement of an action, *see FDIC*, 130 Nev., Adv. Op. 88, 336 P.3d at 965—not a limitation on the date for the court's disposition—this argument lacks merit.

Barber further argues that the State violated his due process rights when it violated NRS 62D.310, and thus, "had a conscious indifference to following the rules of procedure." Barber cites three cases for the proposition that dismissal is appropriate when a prosecutor either willfully fails to follow procedural rules or is consciously indifferent to following procedural rules: *Joseph John H. v. State*, 113 Nev. 621, 622-24, 939 P.2d 1056, 1057-58 (1997); *Bustos v. Sheriff*, 87 Nev. 622, 623-24, 491 P.2d 1279, 1280-81 (1971); and *Maes v. Sheriff*, 86 Nev. 317, 319, 468 P.2d 332, 333 (1970). First, NRS 62D.310 does not specifically put any requirements on the State. Additionally, although the delay here is somewhat troubling, there is nothing in the record to explain it. Finally, in each of the cases Barber cited, the defendant either objected to or filed a motion based on the prosecutor's failure to comply with procedural rules. *See Joseph John H.*, 113 Nev. at 622, 939 P.2d at 1057 (indicating that defendant objected after prosecutor requested a continuance based only on an oral affidavit of diligence); *Bustos*, 87 Nev. at 624, 491 P.2d at 1280-81 (upholding district court's denial of habeas relief due to finding of good cause for delay); *Maes*, 86 Nev. at 319, 468 P.2d at 333 (stating that defendants "petitioned the district court for release via habeas corpus" after no preliminary examination was conducted within the 15-day statutory requirement). Barber failed to move for dismissal in juvenile court or to appeal from the certification order, so he waived this issue.

*There was insufficient evidence to convict Barber*

The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the credibility of witnesses." *Id.* at 202-03, 163 P.3d at 414 (internal quotations omitted). A jury is free to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980).

Burglary is defined in NRS 205.060(1) as "enter[ing] any [structure], with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses." Grand larceny is defined in NRS 205.220(1)(a) as "[i]ntentionally steal[ing], tak[ing] and carr[ying] away . . . [p]ersonal goods or property, with a value of $650 or more, owned by another person[.]"

The sufficiency issue here concerns identity. We have previously addressed whether fingerprint evidence is sufficient to uphold a conviction for burglary. In *Carr v. State*, 96 Nev. 936, 939, 620 P.2d 869, 871 (1980), we held that a defendant's fingerprints on objects *inside* the home and "circumstances rul[ing] out the possibility that they might have been imprinted at a different time" were sufficient to identify the defendant, such that additional corroborating evidence was not needed. In a later case, *Geiger v. State*, 112 Nev. 938, 940-41, 920 P.2d 993, 995 (1996), we relied on *Carr* and held that there was sufficient evidence to

support a conviction for burglary when the only evidence was a fingerprint on a window screen leaning against the house that had been pried off a window that was determined to be the point of entry, and the victim did not know the defendant.

There is a difference between *Carr* and *Geiger* that was not sufficiently acknowledged in *Geiger*—where the fingerprints were found. This difference is significant because burglary requires entry. *See* NRS 205.060(1). Without corroborating evidence, fingerprints and testimony that the occupants did not know the defendant can be sufficient to prove a burglar's identity where, as in *Carr*, the fingerprints are found within the structure's outer boundary. *See, e.g., Merlino v. State*, 131 Nev., Adv. Op. 65, 357 P.3d 379, 385 (2015). But where, as in *Geiger*, the fingerprint evidence is found on the outside of the structure, we conclude that additional evidence is necessary to prove the burglar's identity. We thus overrule *Geiger* to that extent.

The only direct evidence that the State presented to support its theory that Barber was guilty of both burglary and grand larceny was Barber's palm print on the outside of the window, that the occupants did not know Barber, and that there was no reason for his print to be there. The State presented no other evidence that linked Barber to the stolen property or to prove that Barber had entered the home. While the State presented evidence of dirt or marks inside the tub below the bathroom window, our review of the record reveals no evidence presented by the State that placed Barber inside the home or to show that it was Barber who left the dirt or marks inside the tub. Although circumstantial evidence alone may support a verdict, *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993); *see also Deveroux v. State*, 96 Nev. 388, 391,

610 P.2d 722, 724 (1980), we conclude that the limited evidence in this case is too weak to support a conviction for burglary and grand larceny.

Based on the evidence in this case, we conclude that the State failed to sufficiently prove the elements of burglary and grand larceny such that any rational juror could have found Barber guilty beyond a reasonable doubt. *See Rose*, 123 Nev. at 202, 163 P.3d at 414. For this reason, we reverse the district court's judgment of conviction.

____________________, C.J.
Hardesty

We concur:

____________________, J.
Parraguirre

____________________, J.
Douglas

____________________, J.
Cherry

____________________, J.
Saitta

____________________, J.
Gibbons

____________________, J.
Pickering