**132 Nev., Advance Opinion 26**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MICHAEL J. SCHOFIELD, <br> Appellant, <br> vs. <br> THE STATE OF NEVADA, <br> Respondent. | No. 65193 <br> **FILED** <br> APR 2 1 2016 <br> TRACIE K. LINDEMAN <br> CLERK OF SUPREME COURT <br> BY _____ <br> CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping and child abuse, neglect, or endangerment. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Reversed.*

Karen K. Wong, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Maria E. Lavell and Steven S. Owens, Chief Deputy District Attorneys, Clark County,
for Respondent.

_____

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Nevada's first-degree kidnapping statute makes it a category A felony to "lead[ ], take[ ], entice[ ], or carr[y] away or detain[ ] any minor *with the intent to keep*, imprison, or confine the minor from his or her parents, guardians, or any other person having lawful custody of the

6/30/16: Corrected per letter to publishers. CJ

16-12413

minor . . . ." NRS 200.310(1) (emphasis added). Appellant argues NRS 200.310(1)'s "intent to keep" language is ambiguous, and there was insufficient evidence to convict him using the proper interpretation of "intent to keep." In addressing appellant's contention, we conclude that (1) NRS 200.310(1)'s "intent to keep" language is ambiguous; (2) pursuant to the canons of statutory interpretation, NRS 200.310(1) requires proof that the accused intended to keep the minor for a protracted period of time or permanently; and (3) reversal is warranted because there is insufficient evidence to support appellant's first-degree kidnapping conviction under the proper legal standard.

## FACTS

Appellant Michael John Schofield (Schofield) is the father of Michael Joshua Schofield (Michael). At the time of the incident, and for more than a decade prior, Schofield's mother and stepfather (Patricia and Norman, respectively) had legal custody of Michael.[1]

As was typical, Schofield came to visit Michael at Patricia and Norman's house on a Sunday. During the visit, Schofield realized he left something behind at the grocery store and asked Michael to go with him to get it. Michael said no. Schofield insisted that Michael go, and when Michael continued to say no, the argument became physical. Michael tried to walk, then run, away from Schofield inside the house. Eventually,

---

[1]The record is silent as to the precise extent of Schofield's parental rights; however, the parties agree Patricia and Norman had legal custody of Michael and acted as his primary caregivers. There is no indication in the record that Schofield was seeking, or had ever sought, a change to the custody rights for Michael. Indeed, the record shows that Schofield typically visited Michael a couple times a week, and that arrangement worked well for all parties.

Schofield caught up with Michael and put him in either a chokehold or a headlock. Schofield then dragged Michael outside and threw Michael into his van, which was parked in the driveway. During these events, Patricia called 911 for help, and Norman repeatedly told Schofield to stop. Two off-duty police officers who lived next door tackled Schofield before he could get in the van and leave with Michael.

Schofield was arrested and charged with child abuse, neglect or endangerment; domestic violence (strangulation); burglary; and first-degree kidnapping. Schofield initially had counsel, but he opted to represent himself toward the end of trial. A jury convicted him of child abuse and first-degree kidnapping but acquitted him of domestic violence (strangulation) and burglary. Schofield now appeals from the judgment of conviction, challenging his first-degree kidnapping (NRS 200.310(1)) conviction.[2]

## DISCUSSION

Schofield argues NRS 200.310(1)'s "intent to keep" requirement is ambiguous, and, under the proper interpretation of that requirement, there is insufficient evidence to support his first-degree kidnapping conviction.[3] NRS 200.310(1) states:

---

[2]Schofield has not challenged his child abuse conviction on appeal.

[3]Schofield also argues that the child-kidnapping provisions of NRS 200.310(1) do not apply to the minor's parents, guardians, or other person who has lawful custody. For a general discussion, see William B. Johnson, *Kidnapping or Related Offense by Taking or Removing of Child by or Under Authority of Parent or One in Loco Parentis*, 20 A.L.R.4th 823 (1983 & Supp. 2016) (collecting cases). We do not reach this issue, as it is unnecessary to our disposition of this appeal, and it was neither raised nor developed in the district court.





[A] person who leads, takes, entices, or carries away or detains any minor *with the intent to keep*, imprison, or confine the minor from his or her parents, guardians, or any other person having lawful custody of the minor . . . is guilty of kidnapping in the first degree which is a category A felony.

(Emphasis added.)[4] Schofield argues that the "intent to keep" language in NRS 200.310(1) requires an intent to keep a minor permanently or indefinitely. Based on this argument, we must determine (1) whether NRS 200.310(1)'s "intent to keep" language is ambiguous; (2) if so, what "intent to keep" means; and (3) whether there was sufficient evidence to convict Schofield of first-degree kidnapping under the appropriate legal standard.

*NRS 200.310(1)'s "intent to keep" language is ambiguous*

"Statutory interpretation is a question of law subject to de novo review." *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). "We must attribute the plain meaning to a statute that is not ambiguous." *Id.* "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations." *Id.*

In material part, NRS 200.310(1) requires proof that the accused intended "to keep . . . the minor from his or her parents, guardians, or any other person having lawful custody" before criminal liability attaches for first-degree kidnapping. Schofield argues that the word "keep" unambiguously means "keep permanently or indefinitely," or, alternatively, that the term is ambiguous and should be narrowly defined.

---

[4]The material jury instruction here mirrored NRS 200.310(1)'s language.

We conclude the verb "to keep," as employed in NRS 200.310(1), is ambiguous and therefore not susceptible to a plain meaning analysis. *See id.*

The verb "to keep," as used in NRS 200.310(1), is ambiguous because it can reasonably be interpreted in at least two different ways. *See id.* First, "keep" can mean "[preserve, maintain]: as . . . to continue to maintain," or similarly, "to retain or continue to have in one's possession or power." *Keep, Webster's Third New International Dictionary* (2002). Such definitions of the word "keep" focus on dominion or possession for a period of time, either permanently or for a protracted period. Second, "keep" can mean "to restrain from departure or removal," which envisions possession against some countervailing force, rather than possession for a period of time. *Id.* Therefore, a person attempting to interpret NRS 200.310(1) could reasonably conclude that first-degree kidnapping requires an intent (1) to possess a minor permanently or for a protracted period, or (2) to possess a minor for *any* period of time against his legal guardian's wishes. Thus, we conclude that NRS 200.310(1)'s "intent to keep" language is ambiguous.

*The word "keep" in NRS 200.310(1) must mean "keep permanently or for a protracted period of time"*

"If the statute is ambiguous, then this court will look beyond the statutory language itself to determine the legislative intent of the statute." *Haney v. State*, 124 Nev. 408, 412, 185 P.3d 350, 353 (2008). The rule of lenity, which "demands that ambiguities in criminal statutes be liberally interpreted in the accused's favor . . . only applies when other statutory interpretation methods, including the plain language, legislative history, reason, and public policy, have failed to resolve a penal statute's

SUPREME COURT
OF
NEVADA

(O) 1947A

ambiguity." *State v. Lucero*, 127 Nev. 92, 99, 249 P.3d 1226, 1230 (2011) (internal quotation marks omitted).

NRS 200.310(1)'s legislative history sheds no light on the Legislature's intended meaning for the word "keep." Similarly, NRS 200.310(1)'s legislative history does not provide meaningful guidance about how the word "keep" should be interpreted in light of the underlying rationale and public policy that induced the Legislature to adopt NRS 200.310(1). Therefore, we must invoke the rule of lenity to resolve this ambiguity and interpret NRS 200.310(1) in Schofield's favor.

Interpreting "keep" to mean "possess for any amount of time against a legal guardian's wishes" is exceptionally broad. Indeed, that interpretation would require a jury to convict Schofield of first-degree kidnapping—a category A felony with a five-year mandatory minimum sentence—even if it believed he merely intended to take Michael to the store and immediately return him to Patricia and Norman's custody. Alternatively, "keep" could be read more narrowly to mean "exercise continuous and enduring possession or dominion." Such a definition of "keep" would require a first-degree kidnapping charge to be supported by proof that, at the moment the defendant took possession of the minor, the defendant either intended to keep the minor permanently or for a protracted period of time. Based on the foregoing, we now conclude that the rule of lenity requires that we interpret NRS 200.310(1)'s "intent to keep" requirement as requiring an intent to keep a minor permanently or for a protracted period of time.

*Schofield's first-degree kidnapping conviction must be reversed*

"When determining whether a jury verdict was based on sufficient evidence to meet due process requirements, we will inquire whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotation marks omitted)). Using the proper definition of "intent to keep," there is insufficient evidence to support Schofield's first-degree kidnapping conviction because there was no evidence that he intended to keep Michael permanently or for a protracted period. In fact, the overwhelming evidence at trial showed Schofield intended to take Michael to the store and then return him to Patricia and Norman.

Although NRS 200.310(1) allows a first-degree kidnapping charge to be supported by an intent "to keep, imprison, *or* confine," the arguments at trial—including closing arguments—and on appeal have focused solely on whether Schofield intended "to keep" Michael. (Emphasis added.) The State has never meaningfully argued that Schofield intended to confine or imprison Michael. Indeed, the State's closing argument argued that (1) it only needed to show Schofield intended to *take* Michael; and (2) "[t]here's nothing in that statute . . . that says he has to permanently keep the child, [or] have the intention of permanently keeping the child."

Thus, Schofield was convicted of first-degree kidnapping when no rational juror could have found, beyond a reasonable doubt, that he intended to keep Michael permanently or for a protracted period. Accordingly, Schofield's first-degree kidnapping conviction is reversed as unsupported by the evidence against him.[5] *See Vega v. State*, 126 Nev.

---

[5]We decline to address Schofield's remaining arguments as our reversal renders them moot.

332, 345, 236 P.3d 632, 641 (2010); *accord Rose*, 123 Nev. at 202, 163 P.3d at 414.

_____, J.
Hardesty

We concur:

_____, J.
Saitta

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A