CLIFFORD DARRELL ISBELL, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 10672

April 15, 1981

626 P.2d 1274

*Morgan D. Harris,* Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City, and *Robert J. Miller,* Las Vegas, for Respondent.

## OPINION

By the Court, YOUNG, D. J.:[1]

The facts show that appellant, Cliff Isbell, was observed in Big Daddy's Casino with Billy Allen on September 16, 1977. The two men engaged in several conversations with the club's bartender, Gerri Lawrence, and purchased $5.00 worth of quarters, stating they would not need that many but would take them anyway. Mrs. Lawrence observed appellant playing with a copper-colored wire. The wire broke, and appellant told Allen that he made inferior tools, and they would have to go get another one, which they proceeded to do.

Upon returning to the casino, Gerri Lawrence observed appellant approach a slot machine with a silver-colored wire in his hand. With Allen standing nearby, appellant inserted the wire into the left side of the slot machine. The two men stayed near the machine for several minutes. During this time Mrs. Lawrence heard and saw the slot machine pay off several times.

During the time interval when appellant and Allen left to get another wire, Mrs. Lawrence called her employer, Dr. Miller, owner of Big Daddy's Casino, to relay what she had observed. Dr. Miller in turn called the police. The police arrived while appellant was playing the slot machine. When appellant observed the police, he removed the wire from the machine and walked into the next room which contained pinball machines. Gerri Lawrence watched appellant get down on his knees and deposit the wire under a pinball machine. When appellant left the room where the pinball machine was located, he returned to the bar and sat down with Allen. The police approached the two men and asked to see them outside. The wire was retrieved from under the pinball machine by Mrs. Lawrence and given to the police.

---

[1]The Governor designated The Honorable Llewellyn A. Young, Judge of the Sixth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice. Nev. Const. art. 6 § 4.

Allen and appellant were subsequently arrested. A three-count indictment was handed down by the grand jury charging them with cheating at gambling (Count I), conspiracy to cheat at gambling (Count II), and possession of a cheating device (Count III). Allen disappeared while on bail and was never brought to trial.

During the trial the state called Jim Haddad from the gaming commission to demonstrate certain methods of cheating a slot machine. Haddad brought a slot machine manufactured by the same company that manufactured the machine played by appellant in the casino. Haddad testified that the two machines were substantially similar in that they were mechanically and electronically the same. Although no evidence was presented that appellant used two wires to cheat the machine, Haddad used two wires in his demonstration. Earlier, however, Haddad testified that these slot machines could be cheated by one wire. This testimony was corroborated by George Thompson, Director of Slot Machines for Argent Corporation.

On January 9, 1978, the jury found appellant guilty on Count II (conspiracy to cheat at gambling) and Count III (possession of a cheating device). Count I (cheating at gambling) was dismissed.

On the day following completion of the trial, Renee Ellis, a juror, called the defense attorney and stated that she did not feel the verdict was fair and that she was not convinced that the defendant was guilty of any count. Subsequent to this conversation, affidavits of several jurors were taken. Juror Ellis, in her affidavit, stated that she went home on January 9, 1978 (the day the jury foreman signed the verdict, but the day before the verdicts were read in court), and discussed the evidence and deliberations with her husband. In addition, Juror Ellis stated that she had heard Mrs. McBride, another juror, make a statement to the effect that the defendant had to be guilty or the grand jury would not have indicted him. Juror Torry, in her affidavit, also said that she had discussed trial procedures with a third party. Juror Torry also alleged that she heard Juror McBride's statement concerning the grand jury indictment. Upon discovery of the alleged jury misconduct, the appellant made a motion for a new trial. The motion was denied. This appeal followed.

Appellant first contends that there is insufficient evidence to support the conspiracy conviction. According to NRS 199.480(2)(d), whenever two or more persons conspire to cheat

or defraud another out of any property by unlawful or fraudulent means, each is guilty of a gross misdemeanor. Generally, no overt act need be shown for a conspiracy to exist.[2] From the actions of appellant and Allen discussed above, a jury could find that there was an agreement to defraud the owner of the slot machine, a conspiracy. Where, as here, there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal. Cunningham v. State, 94 Nev. 128, 575 P.2d 936 (1978); Sanders v. State, 90 Nev. 433, 529 P.2d 206 (1974).

Appellant next contends that the trial court erred in denying his motion for new trial on the basis of juror misconduct. Any private communication with a juror in a criminal case on any subject connected with the trial is presumptively prejudicial. Remmer v. United States, 347 U.S. 227 (1954); Conforte v. State, 77 Nev. 269, 362 P.2d 274 (1961). The burden is on the respondent to show that these communications had no prejudicial effect on the jurors. Remmer v. United States, *supra;* Parsons v. State, 74 Nev. 302, 329 P.2d 1070 (1958). A hearing before the trial court is the proper procedure to determine whether a communciation is or is not prejudicial. Remmer v. United States, *supra.* The district court, after a hearing, made a determination that the jurors' communications were not prejudicial. At the hearing, both jurors testified that the persons to whom they spoke had no connection with the case. They stated that neither was threatened, induced, nor advised to render a certain verdict. The court properly concluded that these conversations were monologues rather than discussions, and that jurors were merely venting frustrations concerning trial procedures rather than inducing responses from third parties.

Determining whether the evidence presented rebuts a presumption of prejudice is a factual determination, and if supported by substantial evidence, will not be disturbed. Conforte v. State, *supra.* Substantial evidence exists to show that the conversations were not prejudicial.[3]

---

[2] NRS 199.490 states:

"In any such proceeding for violation of NRS 199.480, it shall not be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy or combination."

[3] Furthermore, the jurors' change of mind came too late. The unauthorized communications occurred on the evening of January 9, 1978, after the jury foreman had signed the verdicts on Counts II and III. Both jurors requested the jury to reconsider the verdicts on the morning of January 10, 1978, but the issue was not presented forcefully enough for another vote to be taken. The verdicts were read in open court and the members of the jury polled; all agreed with the verdict of guilty. After a jury has given

Appellant also challenges the denial of the motion for new trial on the ground that Juror McBride maintained a bias against him which she concealed on *voir dire*. The bias alleged is contained in Mrs. McBride's statement that appellant must be guilty or the grand jury would not have indicted him. Mrs. Torry and Mrs. Ellis testified at the hearing that they, as well as other jurors, heard her statement. Six other jurors, by affidavit, stated that they did not hear Mrs. McBride, or any other juror, make such a statement. McBride, in her post-trial affidavit, denied making such a statement.[4] In fact, she stated that she was very careful to observe the jury instruction and the presumption of innocence. A questionnaire sent to the jury foreman during deliberations revealed that after six ballots on Count I, the jury had reached a twelve to zero decision to acquit. Had Count I not been dismissed by stipulation, the defendant would have been acquitted as to that count. This shows that no member of the jury was biased since none rendered a guilty vote on Count I.

Based on these facts, the trial judge concluded that no actual bias existed. The trial court, therefore, logically concluded that no intentional concealment of a bias existed. The determination of the question of intentional concealment is a determination of fact by the trial court which cannot be overturned when substantial evidence exists to support the decision of the judge. *See* Walker v. State, 95 Nev. 321, 594 P.2d 710 (1979); McNally v. Walkowski, 85 Nev. 696, 462 P.2d 1016 (1969). The facts presented support the trial court's finding.

Finally, appellant asserts that the trial court abused its discretion in allowing the demonstration of cheating crimes on a slot machine without a proper foundational showing. Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions. The decision whether to allow a demonstration rests largely in the discretion of the trial judge, and his decision will not be overturned on appeal absent a clear showing of an abuse of discretion. Smith v. State, 87 Nev. 84, 482 P.2d 302 (1971).

---

its verdicts, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling to assent to the verdict comes too late. United States v. Schroeder, 433 F.2d 846 (8th Cir. 1970), *cert. denied,* 401 U.S. 943 (1971). As the jurors' actions in this case could be considered merely a change of mind subsequent to the verdict, they do not warrant the granting of a new trial.

[4]The affidavits of the six jurors and Mrs. McBride are not a part of the record on appeal. They are referred to in the trial judge's decision.

Mr. Haddad, who conducted the demonstration, testified that the slot machine used in the demonstration was manufactured by the same company as the slot machine in question in Big Daddy's. Mr. Haddad further stated that the machines were mechanically and electronically the same. While Haddad had no knowledge as to whether the circuitry of the two machines was similar, he did state that the machine could still be cheated, irrespective of any difference in the circuitry. From the above facts, the judge ruled that the foundation requirements had been met. The evidence supports the trial court's conclusion.

The judgment of the trial court is affirmed.

GUNDERSON, C. J., and MANOUKIAN, BATJER, AND MOWBRAY, JJ., concur.