JULIAN RICHARD FALCON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 24732

May 19, 1994

874 P.2d 772

*Lawton and Drakulich,* Fallon, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Craig Jorgenson,* District Attorney and *Dennis C. Wilson,* Deputy District Attorney, Mineral County, for Respondent.

---

## OPINION

*Per Curiam:*

This is an appeal from a judgment of conviction, pursuant to a jury verdict of numerous criminal counts. For reasons stated below, we affirm the decision of the district court.

### FACTS

On October 21, 1992, at 9:30 p.m., appellant Julian Richard Falcon ("Falcon") burst into the apartment of Chris Nepper. Falcon was carrying a large axe. In the apartment at the time were Nepper, his girlfriend, his three-year-old daughter and his girlfriend's three-year-old daughter. Thus began Falcon's nearly six-hour reign of terror.

Falcon threatened to kill all four individuals if they refused to cooperate. He forced Nepper and the children to one room. He then proceeded, with axe or knife in hand, to force Nepper's girlfriend to inhale cocaine, smoke marijuana, perform numerous acts of oral sex on him and engage in sexual intercourse. He also handed her a knife and told her to kill Nepper. At some point, he forced Nepper to smoke marijuana and locked him in a closet. Falcon finally left sometime after 3 a.m., at which time Nepper called the police.

After leaving the apartment, Falcon went down an alley to his mother's house, leaving footprints in the wet sand. He put the axe in a shed, smoked and ingested more of his drugs, and then went into the house.

The police arrived at the home of Falcon's mother at approximately 7:30 a.m. Falcon's mother informed the officers that Falcon was not there, but permitted them to enter his bedroom. There, the officers found Falcon hiding in a closet. Falcon was arrested and taken to the Mineral County Jail.

At the jail, Falcon's booking officer filled out an arrest and property form. She also filled out a visual observation opinion form in which she stated that she observed that Falcon showed no

signs of abnormal behavior or of being under the influence of controlled substances or alcohol.

Later that afternoon, at approximately 2 p.m., Captain Edward Smith read *Miranda* warnings to Falcon. Captain Smith observed that Falcon appeared normal and sober except that his eyes were somewhat glassy. Captain Smith asked Falcon to spell his name which he did with no incoherence or difficulty. In addition, Captain Smith asked Falcon several other questions and was satisfied that Falcon was able to understand his rights enough to make an intelligent waiver. Falcon testified that he knew he did not have to speak to Captain Smith without his attorney, but that he wanted to, so he signed a card waiving his rights.

Falcon was later bound over and a jury trial was held. Two hours after the jury had retired to deliberate, it was discovered that the alternate juror had entered the jury room with the jury. The alternate juror was removed and the jury continued its deliberations which lasted for approximately nineteen hours before a verdict was reached.

The jury found Falcon guilty of seventeen counts of sexual assault with the use of a deadly weapon, one count of first degree kidnapping with the use of a deadly weapon, one count of second degree kidnapping with the use of a deadly weapon, one count of burglary, two counts of dissuading a witness from reporting the crimes, one count of supplying a controlled substance, two counts of use of a controlled substance to aid in the commission of a crime, one count of possession of a controlled substance, and two counts of being under the influence of a controlled substance (methamphetamine and marijuana).

Following the verdicts, Falcon's counsel moved for a mistrial due to the presence of the alternate juror in the jury room for the first two hours of deliberations. Each juror, including the alternate, was then called in by the judge to testify as to the alternate's actions and impact on the final verdict. The alternate testified that he merely sat by a window and did not participate in any deliberations. All the jurors testified that the alternate did not participate in any way and had no impact on their verdict. Following this testimony, the district court denied Falcon's motion for a mistrial, finding that no actual prejudice had resulted from the presence of the alternate during the first two hours of deliberations.

Falcon now appeals, asserting two errors below: (1) the presence of the alternate juror deprived him of his constitutional right to trial by jury; and (2) the waiver of his right to remain silent after receiving *Miranda* warnings was not voluntary and intelligent because he was under the influence of drugs and alcohol, and therefore any information gained from him during that time was inadmissible.

## DISCUSSION

We first address Falcon's claim that the presence of the alternate juror in the jury room during the first two hours of deliberations denied him his right to trial by jury. Though we have not dealt with this precise issue previously, we enunciated a presumption of prejudice standard for juror misconduct in Isbell v. State, 97 Nev. 222, 626 P.2d 1274 (1981). There, we held that any nonjuror having private communication with a juror in a criminal case on any subject connected with the trial is presumptively prejudicial. Id. at 226, 626 P.2d at 1276. A hearing before the trial court is the appropriate method for determining whether prejudice existed. Id., 626 P.2d at 1277. The burden is on the respondent to show that the communication was not prejudicial. Id. Determining whether prejudice exists is a factual determination, one that will not be disturbed on appeal if supported by substantial evidence. Id.

Our statutes provide guidelines for the sequestering of jurors during deliberations. NRS 175.391 provides that the officer in charge of the jurors shall keep them separate from other persons during deliberations. NRS 175.061 provides for alternate jurors to replace regular jurors after the jury has retired to deliberate. However, no statute provides for the dismissal of alternate jurors once deliberations begin.

Clearly, the presence of an alternate juror during deliberations violates NRS 175.391. Such unauthorized contact with the jury creates a presumption of prejudice under Isbell. Therefore, the State had the burden of refuting this presumption of prejudice with substantial evidence.

As stated above, the court held a hearing following the verdict at which all jurors testified as well as the alternate juror. There was no testimony that the alternate juror participated in the deliberations, nor was there testimony that the presence of the alternate for the first two hours of deliberations had any impact on the jury's verdict. Indeed, several jurors testified that they were unaware of the presence of the alternate until he was told to leave. Therefore, we conclude that the State successfully refuted the presumption of prejudice arising from the presence of the alternate juror during the first two hours of deliberations. Accordingly, the district court did not err in denying Falcon's motion for a mistrial.

We now turn to Falcon's assertion that the district court erred in admitting statements made by him after receiving Miranda warnings because he was under the influence of controlled substances at the time and was unable to make a voluntary and

intelligent waiver of his rights. We have held that the validity of a defendant's waiver of his Fifth Amendment rights after receiving *Miranda* warnings must be determined in each case by examining the facts and circumstances of the case such as the background, conduct and experience of the defendant. Anderson v. State, 109 Nev. 1129, 1133, 865 P.2d 318, 320 (1993) (citing Edwards v. Arizona, 451 U.S. 477 (1981)); *see also* Stewart v. State, 92 Nev. 168, 170-71, 547 P.2d 320, 321 (1976) (mere intoxication will not preclude the admission of a defendant's statements unless it is shown that the intoxication was so severe as to prevent the defendant from understanding his statements or his rights). The State must prove by a preponderance of the evidence that the defendant knowingly and intelligently waived his Fifth Amendment rights. Scott v. State, 92 Nev. 552, 554, 554 P.2d 735, 736-37 (1976) (citing Lego v. Twomey, 404 U.S. 477 (1974)).

Falcon now contends that Captain Smith knew he had taken controlled substances and still chose to read him his *Miranda* rights and question him. Falcon claims that reasonable doubt exists as to whether his waiver of his rights was voluntary and intelligent in view of his physical condition.

We disagree. As the State points out, Falcon was interviewed approximately eleven and one-half hours after the crime was reported and six and one-half hours after his arrest. Neither his booking officer nor Captain Smith observed Falcon to be incoherent or incapable of understanding the circumstances and what was being said to him. Captain Smith testified that during questioning, Falcon exhibited none of the classic symptoms of intoxication or of being under the influence of controlled substances. Falcon sat straight on his chair and was able to respond to questions with no difficulty. After asking Falcon a number of questions to determine intoxication, if any, Captain Smith was satisfied that Falcon was able to comprehend and voluntarily and intelligently waive his rights. In addition, Falcon himself testified that he willingly spoke to Captain Smith, knowing he was not required to do so.

After viewing the totality of the circumstances, we conclude that the State has shown by a preponderance of the evidence that Falcon voluntarily and intelligently waived his Fifth Amendment rights. Therefore, we hold that the district court did not err in admitting statements made by Falcon after receiving *Miranda* warnings and waiving his Fifth Amendment rights.

In conclusion, we hold that while a presumption of prejudice arose from the presence of the alternate juror during the first two hours of deliberations, the State successfully refuted that presumption to show that no actual prejudice resulted. Therefore, the district court did not err in denying Falcon's motion for a mistrial. In addition, we hold that the State proved by a preponder-

ance of the evidence that Falcon intelligently and voluntarily waived his Fifth Amendment rights. Therefore, the district court did not err in admitting Falcon's statements made after his waiver of those rights. Accordingly, we affirm the decision of the district court.