An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BRANDON MONTANE JEFFERSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62120

**FILED**

JUL 29 2014


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault and one count of lewdness. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

Appellant Brandon Jefferson was convicted based largely upon the testimony of his daughter C.J., who testified that when she was five years old her father engaged in vaginal, anal, and oral intercourse with her. C.J.'s mother first contacted police when C.J. stated that her father had forced her to perform oral sex on him. Detectives arrested Jefferson and conducted an interview, during which Jefferson admitted to having some sexual contact with his daughter, including oral intercourse. He denied having vaginal or anal intercourse with her. Prior to trial, Jefferson moved unsuccessfully to have his confession suppressed.

On appeal, Jefferson alleges the following errors require reversal of his conviction: (1) the district court erred in denying his motion to suppress his confession; (2) multiple instances of prosecutorial misconduct; (3) the district court abused its discretion in admitting evidence of jail phone calls between Jefferson and his wife; (4) the district court abused its discretion in admitting certain expert testimony from Dr. Theresa Vergara; (5) the district court abused its discretion in admitting

the testimony of Jefferson's wife and son as to C.J.'s statements; (6) the district court erred in denying his request for a hearing pursuant to *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985), to determine whether C.J. had prior sexual experiences; (7) there was insufficient evidence to support the jury's verdict; (8) his two consecutive life sentences constitute cruel and unusual punishment; (9) the district court abused its discretion in failing to give his proposed jury instructions; (10) the district court abused its discretion in denying his motion to dismiss counsel and appoint new counsel; and (11) cumulative error. Because we conclude that any error that occurred in this case was harmless, we affirm the judgment of conviction.

*The district court did not err in denying Jefferson's motion to suppress his confession*

Jefferson argues that the district court erred in denying his motion to suppress the statements he made to law enforcement. He argues that his confession was involuntary because he was subjected to repeated and prolonged questioning, as well as deceptive interrogation techniques.

"A confession is admissible only if it is made freely and voluntarily, without compulsion or inducement." *Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). "To determine the voluntariness of a confession, the court must consider the effect of the totality of the circumstances on the will of the defendant." *Id.* at 214, 735 P.2d at 323. Factors relevant to voluntariness include: "the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.* "On appeal, if substantial evidence

SUPREME COURT
OF
NEVADA

(O) 1947A

supports the district court's finding that the confession was voluntary, then the district court did not err in admitting the confession." *Brust v. State*, 108 Nev. 872, 874, 839 P.2d 1300, 1301 (1992).

We conclude that substantial evidence supports the district court's conclusion that Jefferson's confession was voluntary. Jefferson, an adult, does not claim that he misunderstood what was happening; he responded cogently to the detectives' questions; his interrogation began with an explanation of his *Miranda* rights; it took place at a reasonable time (9:00 p.m.) and lasted only 45 minutes; and, while one of his hands was handcuffed to a bar, he was free to leave any time for water or to use the restroom.

Additionally, Jefferson's argument that his confession was rendered involuntary by the detectives' deceptive interrogation techniques is unavailing. Jefferson argues that the detectives misrepresented DNA evidence by exaggerating what DNA evidence could reveal to them and the time frame in which they would learn the information. However, "an officer's lie about the strength of the evidence against the defendant is, in itself, insufficient to make the confession involuntary." *Sheriff, Washoe Cnty. v. Bessey*, 112 Nev. 322, 325, 914 P.2d 618, 619 (1996). The question is whether the tactics "'interject[ed] the type of extrinsic considerations that would overcome [Jefferson's] will by distorting an otherwise rational choice of whether to confess or remain silent.'" *Id.* at 325, 914 P.2d at 620 (quoting *Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992)). In this case, such tactics would not likely overcome Jefferson's will because, if Jefferson was truly innocent, he would not be concerned that DNA evidence would implicate him. Rather, he would know that it would

exonerate him. Thus, nothing about the detectives' tactics appears coercive or likely to produce a false confession.

Jefferson's arguments that the detectives impermissibly implied that the prosecutor would be informed that he refused to cooperate, and threatened to take away his children are equally unavailing. The detectives indicated that if the DNA showed something different than what Jefferson had told them, then the DA would be aware of the discrepancy, which would likely be bad for Jefferson. But that is not the equivalent of a threat to inform the DA that Jefferson was not cooperating. Likewise, the detectives told Jefferson that, given the allegations against him, he might not be able to be around his children for a while. However, this statement was only made in response to Jefferson's own questions regarding his children. This was not a coercive tactic to get Jefferson to confess, but merely a true statement of the current situation.[1]

---

[1]Jefferson's argument to this court appears to conflate two separate legal issues—waiver of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and whether his statement was voluntary. To the extent that Jefferson is also arguing that his waiver of his *Miranda* rights was not voluntary, we conclude that argument lacks merit. "A valid waiver of rights under *Miranda* must be voluntary, knowing, and intelligent." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006). "[T]he question of whether a waiver is voluntary is a mixed question of fact and law that is properly reviewed de novo." *Id.* In this case, detectives explained to Jefferson that he was in their custody and that they were trying to clear up an investigation. They then read him his *Miranda* rights, and asked him if he understood, to which he replied yes. The detectives began asking him questions, and he responded without further prompting. Thus, the circumstances show Jefferson voluntarily waived *Miranda*.

*Prosecutorial misconduct does not warrant reversal*

Jefferson argues that the prosecutor committed numerous acts of misconduct that warrant reversal of his conviction. In assessing claims of prosecutorial misconduct, this court must first determine whether the prosecutor's conduct was improper, and, if so, the court must then determine whether such conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Reversal is not warranted if the misconduct is determined to be harmless error. *Id.* Under harmless-error review, errors that are not of a constitutional dimension will only warrant reversal if they substantially affected the jury's verdict. *Id.* at 1188-89, 196 P.3d at 476.

Jefferson argues that the prosecutor improperly argued with the defense's expert, Dr. Chambers, and denigrated his credibility by offering the personal opinion that he was not qualified to opine as to how police interrogation techniques can lead to false confessions. Because it is improper for the prosecutor to state his or her own distrust of the testimony of the expert, *Yates v. State*, 103 Nev. 200, 204-05, 734 P.2d 1252, 1255 (1987), we conclude the prosecutor committed misconduct when she stated, "I have not heard one citation of any study, of any documentation, of any conference. . . nothing that you've done that has allowed you to come in and make the generalizations, and educate the jury as you have today." However, we conclude the error was harmless because the court sustained the objection to that comment, and the State's case did not rely entirely on Jefferson's confession.

Jefferson also argues that the prosecutor committed misconduct by referencing testimony from Jefferson's son that his father beat his mother. On cross-examination, when asked by the defense if his parents fought, Jefferson's son stated for the first time that his father beat

his mother. The defense then questioned him further, which ultimately resulted in him admitting that he never saw his father beating his mother. The defense also questioned him about why he never told this to the prosecutors. On redirect, the prosecution questioned Jefferson's son about why he had never mentioned the beatings before. We conclude that the prosecutor did not commit misconduct because the prosecutor did not solicit the comment, and only brought it up in an attempt to rehabilitate the witness from the defense's attempt to discredit him. Furthermore, any misconduct or prejudice to Jefferson was remedied by the fact that the court gave a curative instruction to the jury which stated that "[a]ny allegations of domestic abuse between the defendant and [his wife] . . . are not matters for your consideration, and shall not be considered by you in any way."[2]

*The district court abused its discretion in admitting evidence of jail phone calls between Jefferson and his wife*

Jefferson argues that the district court abused its discretion when it admitted recordings of phone calls between him and his wife during the time he was incarcerated because the calls held minimal relevance, were highly prejudicial and contained inadmissible hearsay. The State argues that the calls were relevant to the family dynamic, which the defense put at issue, and more importantly, they contained admissions from Jefferson regarding the charged crimes. The State admitted into evidence and played for the jury four calls between Jefferson and his wife, three of which had been redacted, but the fourth was played in its entirety, over Jefferson's objection.

---

[2]We conclude that Jefferson's remaining contentions of prosecutorial misconduct lack merit and we decline to address them.

A district court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009). We conclude that while certain portions of the calls were relevant and admissible, the district court erred in allowing the jury to hear conversations that held little relevance, were highly prejudicial, and contained statements that constituted inadmissible hearsay. For example, the jury heard the following statements from Jefferson's wife: "you touched her, it can't be fixed," "you were planning on doing this for the rest of her life, was she your little back up?" and "remember when you said she's gonna be hot one day, she needs to start shaving her legs." These statements were not necessary to give context to Jefferson's admissions, as the State argues, because Jefferson did not respond to them with any admissions.

Furthermore, those statements, as well as other portions of the calls, were highly emotional and inflammatory. In all four calls, Jefferson's wife was clearly distraught and repeatedly expressed that Jefferson had ruined her and her children's lives. She also used inflammatory language, calling Jefferson a pedophile and stating he would do it again. Thus, we conclude that the district court erred in admitting certain portions of the phone calls because the prejudicial value substantially outweighed the probative value. Nevertheless, we conclude the error was harmless given the other evidence against Jefferson; specifically, Jefferson's confession and C.J.'s testimony.

*The district court abused its discretion in admitting expert testimony from Dr. Vergara as to the behavior of perpetrators*

Jefferson next argues that the district court abused its discretion when it allowed the State's medical expert, Dr. Vergara, to offer testimony that vouched for the victim and improperly speculated as to

why a sexual assault victim might have normal physical findings. Dr. Vergara testified that her examination of C.J. revealed no abnormal results, but that "normal is normal" with child sex abuse victims, meaning that a normal examination is typical even though a child has been abused. Because Jefferson did not object to that particular testimony at trial, we review it for plain error. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). We conclude that the district court did not commit plain error in allowing the testimony.

NRS 50.345 provides that "[i]n any prosecution for sexual assault, expert testimony is not inadmissible to show that the victim's behavior or mental or physical condition is consistent with the behavior or condition of a victim of sexual assault." Thus, Dr. Vergara's testimony that child victims of sexual assault often have normal findings was proper. This in no way vouched for C.J.'s credibility. *See Marvelle v. State*, 114 Nev. 921, 931, 966 P.2d 151, 157 (1998) (holding that an expert may not testify to the veracity of another witness), *abrogated on other grounds by Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000).

Jefferson also argues that it was improper for Dr. Vergara to speculate as to how a sexual assault might occur without physical trauma. Specifically, she stated: "[I]f I was going to approach a child with my intentions, I can't hurt that child. Because if I make that child cry, I will never have a chance or opportunity to approach that child again. So, the initial encounter with a child and their perpetrator could be hugging, kissing, rubbing." Jefferson objected to this testimony as improper speculation, and the objection was overruled. We conclude that this testimony was outside the scope of NRS 50.345. It went beyond a discussion of how C.J.'s normal findings were consistent with those of

other sexually abused children and became speculation on the behavior of perpetrators in general. However, we conclude that given the other evidence in the case, this was harmless error that did not "substantially affect[] the jury's verdict." *Valdez*, 124 Nev. at 1189, 196 P.3d at 476.

*The district court did not abuse its discretion in admitting the testimony of C.J.'s mother and brother as to C.J.'s statement that her father abused her*

Jefferson also argues that the district court abused its discretion when it denied his motion in limine to preclude hearsay testimony from his wife regarding C.J.'s statement to her that her father was sexually abusing her. Pursuant to NRS 51.385, hearsay evidence regarding the statement of a child describing sexual conduct is admissible if "[t]he court finds . . . that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness" and "[t]he child testifies at the proceeding." NRS 51.385(1)(a)-(b). In determining the trustworthiness of the statement, the court shall consider, without limitation, whether: "(a) The statement was spontaneous; (b) The child was subjected to repetitive questioning; (c) The child had a motive to fabricate; (d) The child used terminology unexpected of a child of similar age; and (e) The child was in a stable mental state." NRS 51.385(2)(a)-(e).

In this case, C.J. was not subject to repetitive questioning regarding sexual abuse, but rather made the statement to her mother after her mother told the children that she might be leaving their father, and that they should not have any secrets between them. Thus, because C.J. was the one to raise the issue of sexual abuse and it was spontaneous, we conclude that the district court did not err in admitting the statement because there were "sufficient circumstantial guarantees of trustworthiness." NRS 51.385(1)(a).

Jefferson argues it was also impermissible to allow C.J.'s brother to testify about C.J.'s statement to her mother. Her brother was also present in the room when she told her mother about the alleged abuse. However, we conclude that C.J.'s brother's testimony as to C.J.'s statement is admissible pursuant to NRS 51.385, for the same reasons C.J.'s mother's testimony as to C.J.'s statement was admissible, and the district court did not abuse its discretion in admitting the brother's testimony.

*The district court did not err in denying Jefferson's request for a hearing pursuant to* Summitt v. State, *to determine whether C.J. had prior sexual experiences*

Jefferson argues that the district court committed reversible error when it refused to grant him a hearing pursuant to *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985), so he could determine if there was another basis for C.J.'s knowledge of sexual matters. In *Summitt*, the district court denied the defendant's request to introduce a specific incident of prior sexual contact involving the six-year-old victim in order to explain why the child victim had "prior independent knowledge" of sexual matters. 101 Nev. at 160, 697 P.2d at 1375. This court determined that the defendant, upon motion, "'must be afforded the opportunity to show, *by specific incidents of sexual conduct*, that the [alleged victim] has the experience and ability'" to fabricate the crime. *Id.* at 164, 697 P.2d at 1377 (quoting *State v. Howard*, 426 A.2d 457, 462 (N.H. 1981) (emphasis added)).

In this case, Jefferson moved for a hearing pursuant to *Summitt*, in order to determine whether C.J. had any prior experiences that might explain her knowledge of sexual matters. We conclude that the district court did not err in denying Jefferson's request because *Summitt* is

entirely distinguishable and inapplicable to this situation. The premise of *Summitt* is that the defense already has knowledge of this evidence and believes it is constitutionally entitled to present it to the jury. *See* 101 Nev. at 162-63, 697 P.2d at 1376-77. Here, Jefferson sought a hearing to learn whether such evidence existed. Therefore, the district court properly denied the motion.

*There was sufficient evidence to support the jury's verdict*

Jefferson next argues that there was insufficient evidence to support the jury's verdict. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the credibility of witnesses." *Id.* at 202-03, 163 P.3d at 414 (internal quotations omitted). Furthermore, in a sexual assault case, "the victim's testimony alone is sufficient to uphold a conviction" and need not be corroborated so long as the victim testifies "'with *some* particularity regarding the incident.'" *Id.* at 203, 163 P.3d at 414 (quoting *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992)).

In this case, C.J. testified with specificity as to four separate occasions of sexual abuse—three in Jefferson's bedroom, and one in her bedroom. She testified that on each of the three occasions in the master bedroom, Jefferson put his penis in her mouth, vagina, and anus, and on the fourth occasion, in her bedroom, he put his penis in her mouth and vagina. Finally, Jefferson's own confession also supports the lewdness and sexual assault charges as he stated that on different occasions C.J. rubbed

her vagina against his penis, touched his penis, and put his penis in her mouth. Therefore, we conclude there was sufficient evidence supporting the jury's conviction because in viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Jefferson guilty of three counts of sexual assault and one count of lewdness beyond a reasonable doubt. *Rose*, 123 Nev. at 202, 163 P.3d at 414; *see* NRS 200.366(1); NRS 201.230.

*Jefferson's sentences do not constitute cruel and unusual punishment*

Jefferson contends that his sentence amounts to cruel and unusual punishment because it constitutes the remainder of his natural life for conduct that did not result in the loss of human life or permanent physical damage.

This court reviews constitutional issues de novo. *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1277 (2012). "A sentence does not constitute cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979). A punishment is unconstitutionally excessive "'if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime.'" *Pickard v. State*, 94 Nev. 681, 684, 585 P.2d 1342, 1344 (1978) (quoting *Coker v. Georgia*, 433 U.S. 584, 592 (1977)).

In this case, Jefferson's only argument is that his punishment is harsher than a murderer would receive. However, given the fact Jefferson was convicted of repeatedly sexually assaulting his five-year old

daughter, we conclude that the punishment is not so disproportionate to the severity of the crimes as to shock the conscience. Moreover, the punishment serves the purpose of protecting C.J. and other young children from being subjected to sexual assault, and thus accomplishes an acceptable goal of punishment. Therefore, we conclude that Jefferson's sentences do not constitute cruel and unusual punishment.

*The district court did not abuse its discretion in failing to give Jefferson's proposed jury instructions*

Jefferson argues that the district court erred in rejecting his proposed jury instructions. Jefferson sought to have the jury instructed on attempted sexual assault, as well as the possible redundancy of the lewdness and sexual assault counts.

"The district court has broad discretion to settle jury instructions," and its decisions will be reviewed for abuse of discretion or judicial error. *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). "This court evaluates appellate claims concerning jury instructions using a harmless error standard of review." *Barnier v. State*, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003).

Jefferson first argues that the district court was required to instruct the jury on his theory of attempt because of the lack of physical findings and C.J.'s ambiguous testimony. We conclude that this argument lacks merit and that the district court did not abuse its discretion by refusing to give this instruction. Although the defense has a right to have the jury instructed on its theory of the case, here the defense's theory was that C.J. fabricated the story and Jefferson falsely confessed; thus attempt is actually inconsistent with the defense's theory and the evidence presented. *Cf. Margetts v. State*, 107 Nev. 616, 619, 818 P.2d 392, 394 (1991). As such, Jefferson was not entitled to have the jury so instructed.

Jefferson also argues that the district court was required to give his proposed instruction explaining that the State bears the burden of proving any acts of lewdness were not incidental to the sexual assault, and thus, if the jury finds lewdness charges to be redundant, then it must return the verdict of not guilty. We conclude the district court abused its discretion in failing to give the instruction; however, the error was harmless. While the defense was entitled to the redundancy instruction as part of its theory of the case and it was a proper statement of law, the jury only convicted Jefferson of two of the lewdness counts. The prosecution ultimately agreed to dismiss one of those counts as redundant. Therefore, while the district court erred in failing to give the instruction, the error was harmless.[3]

Jefferson further argues that the district court abused its discretion in giving jury instruction no. 12, which stated that the jury must consider whether the State proved that Jefferson's confession was voluntary by "a preponderance of the evidence." This instruction was an accurate statement of the law. *See Falcon v. State*, 110 Nev. 530, 534, 874 P.2d 772, 775 (1994). Moreover, jury instruction no. 11 made it clear that the State needed to prove every element of the charged crimes beyond a

---

[3]Jefferson also argues the district court erred in rejecting his proposed instruction on deliberation, which informed the jury that the verdict needed to be unanimous and each juror must decide the case for themselves. We conclude that this was not an error because the instruction was not related to the defense's theory of the case and it was redundant to other instructions given to the jury. *See Earl v. State*, 111 Nev. 1304, 1308, 904 P.2d 1029, 1031 (1995) (stating that it is not reversible error to refuse a jury instruction that is "substantially covered by other instructions").

reasonable doubt. Therefore, we conclude the district court did not abuse its discretion in allowing this instruction.

*The district court did not abuse its discretion in denying Jefferson's motion to dismiss counsel and appoint new counsel*

Jefferson argues the district court erred when it denied his motion to dismiss counsel and appoint new counsel. This court reviews a district court's "denial of a motion for substitution of counsel for abuse of discretion." *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). This court considers the following three factors when reviewing a district court's decision: "'(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion.'" *Id.* (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).

In this case, the district court conducted an inquiry into Jefferson's request. The court determined that Jefferson was unhappy because he believed his counsel had not provided to him everything obtained through discovery, and his counsel had not obtained his work records. Jefferson's attorney explained that the work records were not relevant and that leaving the records with a client in custody is risky because nothing is private in jail; however, he further expressed that he would provide anything Jefferson requested up to that point. We conclude that based on the factors above, the district court did not err in denying the motion. The district court's inquiry demonstrates the conflict was minimal and could easily be resolved. Furthermore, Jefferson's request was untimely as it was made only a few days prior to trial.

*Cumulative error does not warrant reversal*

Finally, Jefferson contends that cumulative error violated his right to a fair trial. Cumulative error may deny a defendant a fair trial even if the errors, standing alone, would be harmless. *Valdez v. State*, 124

Nev. 1172, 1195, 196 P.3d 465, 481 (2008). "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotations omitted).

In this case, while Jefferson was charged with very serious crimes, the issue of guilt was not close given the overwhelming evidence presented by the State. Furthermore, despite the number of errors Jefferson alleges, the majority of his contentions are meritless, and the cumulative effect of the few errors committed did not amount to the denial of a fair trial. Therefore, after reviewing the entire record, we conclude that Jefferson's cumulative error challenge is unavailing.

Having considered Jefferson's contentions and concluded that they do not warrant reversal, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc: Hon. Valorie J. Vega, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk